Benson v. Family Dollar Operations, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand eighteen.

PRESENT:
> RALPH K. WINTER,
> ROSEMARY S. POOLER,
> > *Circuit Judges,*
> RONNIE ABRAMS,[*]
> > *District Judge.*

_____

Christopher R. Benson,

> *Plaintiff-Appellant,*

> v.                                                                 17-2242

Family Dollar Operations, Inc.,

> *Defendant-Appellee.*[1]

_____

For Appellant:          Christopher Benson, pro se, Rome, N.Y.

For Appellee:           Alan J. Pierce, Robert C. Whitaker, Jr., Hancock Estabrook
                        LLP, Syracuse, N.Y.

---

[*] Judge Ronnie Abrams, of the United States District Court for the Southern District of New York, sitting by designation.

[1] The clerk of the Court is directed to amend the caption as above.

Appeal from the United States District Court for the Northern District of New York (Mordue, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

Appellant Christopher Benson, pro se, appeals from the order of the United States District Court for the Northern District of New York (Mordue, *J.*) granting Appellee's motion for summary judgment. Benson also appeals from a number of decisions made by the district court during trial regarding, inter alia, evidence and jury instructions. Benson's age and disability discrimination claims were resolved on the motion for summary judgment, while his retaliation claim was tried to a jury. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the following reasons, we affirm the district court on all grounds.

### I. Age and Disability Discrimination

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

### A. Age

The *McDonnell Douglas* framework applies to claims under the Age Discrimination in Employment Act ("ADEA"). *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128-29 (2d Cir. 2012). Under *McDonnell Douglas*, after a plaintiff establishes a prima facie case of discrimination, the employer must demonstrate a legitimate, non-discriminatory reason for the adverse employment decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). If the employer does so, the burden then shifts back to the plaintiff to show a triable issue as to whether age was the but-for cause of the employer's adverse action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010). Claims of age discrimination under the New York State Human Rights Law ("NYSHRL") are analyzed under the same standards as ADEA claims. *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 70 n.2 (2d Cir. 2004).

The district court correctly granted summary judgment to Family Dollar on the age discrimination claim. We assume, as the district court did, that Benson established a prima facie case. Family Dollar presented evidence that Benson's demotion was a part of a department-wide reorganization, that promotions were based on work performance and leadership qualities, and that it did not consider age in its decision-making process. At step three of *McDonnell Douglas*, Benson failed to show a triable issue as to whether age was the but-for cause of his demotion. The evidence he offered—his own statistical analysis of the number of employees, the number of promoted

employees, and the percentage of those categories over age 40—was insufficient. First, it was unreliable because there were only 41 employees in Benson's department and only 13 promotions made in the reorganization. *See Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 121 (2d Cir. 1997) ("The smaller the sample, the greater the likelihood that an observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it."). Second, the statistics do not reveal any information about the performance reviews or assessments that were considered by Family Dollar in making its decisions. Without evidence showing that the younger, promoted employees were similarly situated to the older, demoted employees, these statistics do not raise a genuine dispute of material fact. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (holding that similarly situated means being subject to the same performance standards and engaging in the same conduct). Family Dollar is entitled to judgment as a matter of law regarding the age discrimination claim.

### B. Disability

The district court also correctly granted summary judgment to Family Dollar on Benson's disability discrimination claim. Disability discrimination claims under the Americans with Disabilities Act ("ADA") are also analyzed under the *McDonnell Douglas* framework. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Here, if an employer presents a legitimate, non-discriminatory reason for the adverse action, "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (quoting *Sista*, 445 F.3d at 169). Claims of disability discrimination under the NYSHRL are analyzed under the same standards as an ADA disparate treatment claim. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).

As discussed above, Family Dollar presented a legitimate, non-discriminatory reason for the reorganization. Benson's statistics were too unreliable and lacked sufficient detail to show that the reorganization was a pretext for disability discrimination. *See Norville*, 196 F.3d at 96; *Pollis*, 132 F.3d at 121. Further, the few instances of negative treatment Benson cited were not sufficient to raise a question of material fact on the issue of pretext. A Family Dollar executive admonished him about taking an insulin shot at a dinner table and was less friendly to Benson afterward, and another executive once grimaced at the sight of Benson taking an insulin shot. But a single comment is insufficient to present a triable issue as to discriminatory motive. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (noting that stray remarks, even those made by a "decision-maker," are not sufficient to defeat summary judgment). Likewise, a one-time grimace does not a triable issue make. Benson does point to additional incidents: his direct supervisor cancelled a business trip for Benson when he was recovering from back surgery, and Benson was not assigned to train any new employees after the surgery. But he presented no evidence that similarly situated, healthy employees were training new employees at that time. These incidents, considered together, fail to raise a genuine dispute of material fact as to pretext. *See Weinstock*, 224

3

F.3d at 41 ("A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).

### II. Motion in Limine Rulings

We review evidentiary rulings for abuse of discretion, reversing only for manifest error. *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010). "A district court abuses its discretion when it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014) (quoting *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013)). "[A]n evidentiary ruling that is an abuse of discretion is . . . only reversible if it also affects a party's substantial rights," which "requires an assessment of the likelihood that the error affected the outcome of the case." *Manley v. AmBase Corp.*, 337 F.3d 237, 248 (2d Cir. 2003) (alteration in original) (internal quotation marks omitted).

#### A. Audio Recordings

Benson challenges the district court's limitation on the use of audio recordings to impeachment and rebuttal only. But this is not reversible error. Even if the district court had erred by limiting the use of audio recordings, it did not affect the outcome of the case. Benson's counsel introduced a transcript of one audio recording that the parties had stipulated to during Benson's direct examination. Further, his counsel stated that she intended to use the other recordings for impeachment and rebuttal purposes only and, in fact, did so. Thus, the district court's restriction of the audio recordings did not affect the outcome of the case because Benson's counsel was able to use the recordings as she originally planned.

#### B. Watchlist Evidence

Benson also challenges the district court's exclusion of evidence concerning Family Dollar's placement of Benson on a "watchlist" in 2013, two years after he had been fired. The district court did not abuse its discretion by excluding the evidence. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). The watchlist evidence would not have been consequential because it concerned events that happened two years after Benson was fired. In rare circumstances, events occurring after a plaintiff no longer works for an employer are relevant to employment discrimination suits, but this is usually limited to where the employer damages a plaintiff's ability to seek future job opportunities or his reputation. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (considering whether employer retaliated against plaintiff in violation of ADEA after his termination). Here, there was no evidence that the watchlist was shared with anyone who could impact Benson's future job opportunities. Nor did it affect his reputation because the only former colleague with whom it was shared was the executive who had fired Benson in 2011.

4

**III. Steering Committee Meeting Evidence**

Benson also challenges Family Dollar's introduction of evidence that he had inappropriately behaved during meetings of his department's steering committee, arguing that none of the witnesses had previously given testimony on this issue and it had otherwise not been addressed in discovery. Because Benson's counsel did not object, this Court reviews for plain error. *See United States v. Edwards*, 342 F.3d 168, 179 (2d Cir. 2003). Under plain error review, this Court has "discretion to correct a forfeited trial error if that error was obvious or plain, affected [a party's] substantial rights, and seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted; second alteration in original).

Here, any error was not plain. Family Dollar's summary judgment evidence referred to Benson's general behavioral issues, and its opening statement at trial specifically mentioned his behavior during steering committee meetings. Benson's counsel did not object to Family Dollar's opening statement, and Benson's own witness testified about the steering committee disruptions at the prompting of Benson's counsel. Further, Benson concedes that his counsel had the opportunity to cross-examine the other witnesses on this issue. Because Benson's own witness provided testimony about his steering committee behaviors and his counsel had the opportunity at trial to cross-examine the other witnesses, any error in permitting this testimony did not affect his substantial rights. *See United States v. Riggi*, 541 F.3d 94, 102 (2d Cir. 2008) ("An error affects a defendant's substantial rights if it is prejudicial and it affected the outcome of the district court proceedings." (internal quotation marks omitted)).

**IV. Summation, Jury Instructions, and Verdict Form**

Finally, Benson challenges as prejudicial the portion of Family Dollar's summation that stated that the sole liability issue was whether he would not have been fired if not for his protected activity. He argues that the district court's jury charge and special verdict sheet were similarly erroneous. Benson's counsel did not object to this representation of the sole liability issue at any point on the record before us. We review the summation for plain error and reverse only where the error "[is] so serious and flagrant that it goes to the very integrity of the trial." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996) (alternation in original) (internal quotation marks omitted). Similarly, we review unpreserved errors in jury instructions and verdict sheets for fundamental error. *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002). An error in jury instructions or a verdict sheet is unpreserved "when a litigant has not complied with the Fed. R. Civ. P. 51 objection requirements." *Id.* Rule 51 requires the district court to give the parties "an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered," but it also requires any party who objects to do so "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(b)(2), (c)(1). Parties must make such objections, at the latest, "promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2)(B).

There was no error in the jury charge. It properly defined adverse acts as acts that "might well have discouraged a reasonable worker from complaining about discrimination or retaliation . . . [and p]etty slights or minor annoyances do not qualify as a material adverse action." *See*

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (explaining that an adverse act "in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (internal quotation marks omitted)); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (noting that "trivial harms" and "petty slights or minor annoyances" do not constitute adverse acts) (internal quotation marks omitted). Furthermore, the district court's statement that the jury need only find that the termination was not retaliatory to find for Family Dollar occurred when the court read the verdict sheet aloud. Thus, error (if any) goes to the verdict sheet, not the jury charge.

To the extent there was error in the district court's decision to limit the verdict sheet to reference only Benson's termination or, given that the charge conference was held off the record, any procedural error under Rule 51(b)(2), any such errors were not so fundamental as to warrant reversal here. The verdict form omitted questions about the non-termination acts Benson alleged were retaliatory, and Benson is correct that those acts could be considered retaliatory on their own. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. But Benson's counsel did not object to the failure to include such adverse actions on the verdict form on the record—as she would have had to do to preserve any claim of error. Instead, she chose to argue in her summation that the other purportedly adverse actions culminated in Benson's termination. Moreover, because the jury found that Family Dollar had not retaliated against Benson by firing him, it appears unlikely that the jury would have found any of Family Dollar's other acts—meetings, write-ups, work assignments, performance reviews—to be retaliatory. Therefore, the verdict sheet and the Family Dollar summation that relied on it did not create an error so fundamental that it affected the trial's integrity. *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001).

We have considered all of Benson's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6